# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00435-CV

Texas Workers= Compensation Commission; Richard Reynolds, in his Official Capacity as Executive Director of the Texas Workers= Compensation Commission; State Office of Administrative Hearings; and Chief Administrative Law Judge Sheila Bailey Taylor, in her Official Capacity/East Side Surgical Center; Clinic for Special Surgery; and Surgical and Diagnostic Center, L.P., Appellants

v.

East Side Surgical Center; Clinic for Special Surgery; and Surgical and Diagnostic Center, L.P./Texas Workers= Compensation Commission; Richard Reynolds, in his Official Capacity as Executive Director of the Texas Workers= Compensation Commission; State Office of Administrative Hearings; and Chief Administrative Law Judge Sheila Bailey Taylor, in her Official Capacity, Appellees

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. GN202229, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This case involves the failure of the Texas Workers= Compensation Commission (the

ACommission@) to establish fee guidelines for health care services provided by ambulatory surgical centers[1]

under the Texas Workers=Compensation Act (the AAct@). *See* Tex. Lab. Code Ann. '' 401.001-506.002

---

[1] An ambulatory surgical center is a healthcare facility Athat operates primarily to provide surgical services to patients who do not require overnight hospital care.@ Tex. Health & Safety Code Ann. ' 243.002 (West 2001).

(West 1996 & Supp. 2004). Ambulatory surgical centers, East Side Surgical Center, the Clinic for Special Surgery, and intervenor Surgical and Diagnostic Center (collectively AEast Side@), sued the Commission in an attempt to invalidate certain default rules, 28 Tex. Admin. Code '' 133.304(i), 134.1(c) (2003), designed to apply where the Commission has failed to promulgate fee guidelines.[2] After a bench trial, the district court declared rule 133.304(i) invalid and enjoined the Commission from enforcing it. We will reverse the judgment invalidating rule 133.304(i) and dissolve the injunction.

## PROCEDURAL AND FACTUAL BACKGROUND

The parties proceeded to a bench trial on stipulated facts. For our purposes, the most relevant facts are that East Side is an ambulatory surgical center, which has rendered health care services to injured workers who were insured by the Act, that it submits each claim to an insurance carrier, and that the carrier decides how much to pay on each claim based on the carrier=s determination of whether the claim Ais fair and reasonable.@ It is this last point that forms the basis of this suit. East Side contends that the Commission has unlawfully delegated its authority to the carriers to set the fees paid to ambulatory surgical

---

[2] In addition to the Texas Workers= Compensation Commission, East Side sued Richard Reynolds, Executive Director of the Commission, the State Office of Administrative Hearings (ASOAH@), and Administrative Law Judge, Sheila Bailey Taylor. Texas Mutual, Continental Casualty, and the State Office of Risk Management (ASORM@) are insurance carriers authorized to insure payment of workers= compensation. *See* Tex. Lab. Code Ann. ' 401.011(27) (West Supp. 2004). They intervened in support of the Commission. We will refer to them collectively as the ACommission.@

centers.  But before we address the merits of East Side=s argument, we will frame the discussion with an

overview of the applicable statutory and regulatory process at issue.

*The claims-reimbursement process*

Claims for reimbursement for health care services rendered to injured workers insured by

the Act are submitted to the insurance carrier, who pays the fee allowed under section 413.011 of the labor

code.  *See* Tex. Lab. Code Ann. '' 408.027(a),**3** 413.015(a) (West Supp. 2004).  Section 413.011

requires the Commission to establish fee guidelines that are Afair and reasonable and designed to ensure the

quality of medical care and to achieve effective medical cost control.@ *Id*. ' 413.011(a), (d) (West Supp.

2004); *Texas Workers=Comp. Comm=n v. Patient Advocates of Tex.*, 47 Tex. Sup. Ct. J. 607, 2004

Tex. LEXIS 477, at *20-21 (May 28, 2004).  The Commission has yet to establish a fee guideline for

ambulatory surgical care.  *See* 28 Tex. Admin. Code ' 134.401(a)(4) (2003) (AAmbulatory/outpatient

---

**3**       Section 408.027(a) used to read:  AAn insurance carrier shall pay the fee *charged* for a service rendered by a health care provider.@ *See* Act of May 22, 1993, 73d Leg., R.S., ch. 269, 1993 Tex. Gen. Laws 1179, *amended by* Act of June 19, 1999, 76th Leg., R.S., ch. 1426, 1999 Tex. Gen. Laws 4868 (emphasis added).  It now reads:  AAn insurance carrier shall pay the fee *allowed under section 413.011* for a service rendered by a health care provider.@ Tex. Lab. Code Ann. ' 408.027(a) (West Supp. 2004) (emphasis added).  The purpose of this amendment was to clarify that health care providers are not automatically entitled to their billed charges.  House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 2510, 76th Leg., R.S. (1999).

surgical care is not covered by this guideline and shall be reimbursed at a fair and reasonable rate until the issuance of a fee guideline addressing these specific types of reimbursements.@).

In lieu of a fee guideline applicable to ambulatory surgical centers, the Commission promulgated rules 133.1 and 133.304 of title 28 of the administrative code, 25 Tex. Reg. 2127, 2531 (adopted Mar. 10, 2000), and rule 134.1(c) of title 28 of the administrative code, 27 Tex. Reg. 4047-48 (adopted May 10, 2002). Rule 133.1 is entitled, ADefinitions for Chapter 133CMedical Benefits,@ and states that a fair and reasonable reimbursement must meet Athe standards set out in ' 413.001@ of the labor code and is

the lesser of a health care provider=s usual and customary charge, or

(A) the maximum allowable reimbursement [(AMAR@)], when one has been established in an applicable Commission fee guideline,

(B) the determination of a payment amount for medical treatment(s) and/or service(s) for which the Commission has established no maximum allowable reimbursement amount, or

(C) a negotiated contract amount.

28 Tex. Admin. Code ' 133.1(a)(8) (2003).

Rule 133.304(i) states:

(i) When the insurance carrier pays a health care provider for treatment(s) and/or service(s) for which the Commission has not established a maximum allowable reimbursement, the insurance carrier shall:

(1) develop and consistently apply a methodology to determine fair and reasonable reimbursement amounts to ensure that similar procedures provided in similar circumstances receive similar reimbursement.

*Id*. ' 133.304(i) (2003).

And rule 134.1(c) states, AReimbursement for services not identified in an established fee guideline shall be reimbursed at fair and reasonable rates@ under section 413.011 of the labor code until those fees Aare established by the commission.@ *Id*. ' 134.1(c) (2003). These medical-dispute-resolution rules bring us to the underlying dispute.

*The dispute*

East Side sued the Commission for declaratory relief[4] regarding the validity of rules 133.1(a)(8), 133.304(i), and 134.1, and requested injunctive relief to enjoin their enforcement. It asserted that the Commission did not have the express or implied authority to promulgate those rules; that the promulgation of those rules constituted an unlawful delegation of the Commission=s rule-making authority to the insurance carriers, the Medical Review Dispute Officers (AMROs@), *see* 28 Tex. Admin. Code ' 133.307 (2003), and SOAH; and that the Commission was acting outside its statutory authority by allowing the carriers, the MROs, and SOAH to determine reimbursements on an *ad hoc* adjudicatory basis instead

---

[4]    East Side sought declaratory relief under the Administrative Procedures Act (AAPA@), Tex. Gov=t Code Ann. '' 2001.001-.902 (West 2000 & Supp. 2004), the Uniform Declaratory Judgments Act (AUDJA@), Tex. Civ. Prac. & Rem. Code Ann. '' 37.001-.011 (West 1997), and section 402.021 of the labor code, Tex. Lab. Code Ann. ' 402.021 (West 1996). Section 402.021 of the labor code provides that judicial review of a Commission rule is governed by the APA. Tex. Lab. Code Ann. ' 402.021(a).

of by rule.  East Side also requested the district court to declare that in the absence of a properly promulgated fee guideline, it was entitled to its usual and customary reimbursement amount.

After a one-day bench trial, the district court concluded that rule 133.304(i) was invalid because it interfered with and impaired East Side=s legal right and privilege to have fee guidelines established by rule by the Commission and because it improperly delegated to the insurance carriers the Commission=s statutory duty and authority to establish fee guidelines.  The district court enjoined the Commission from applying rule 133.304(i) in setting fees for East Side=s services until the fee guidelines were established by rule by the Commission.  The district court subsequently filed conclusions of law, repeating those previously cited conclusions and adding that the Commission could not by law establish fee guidelines through *ad hoc* adjudication.

Both parties now appeal.  East Side raises one issue:  whether the district court erred in failing to declare that the appropriate payment for a medical service, in the absence of a fee guideline, is the provider=s usual and customary charge.  The Commission raises two issues:  whether rule 133.304(i) was an unlawful delegation of the Commission=s fee-setting authority, and whether rule 133.304(i) interfered with or impaired East Side=s legal right and privilege to have the Commission set its fees.[5]

---

[5]      Intervenor SORM also filed a separate appeal in this Court.  At trial and now on appeal, it argued that the district court lacked jurisdiction over East Side=s request for declaratory relief because East Side had failed to exhaust its administrative remedies prior to instituting suit.  Because the declaratory relief sought by East Side raised pure questions of law and dealt with the authority of the Commission to delegate its fee-setting duties to the insurance carriers, the exhaustion doctrine is inapplicable.  *See Grounds v. Tolar Ind. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986) (questions of law); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978) (challenge to statutory authority); *Mission Ind. Sch. Dist. v. Diserens*, 188 S.W.2d 568, 570 (Tex. 1945) (questions of law); *Chocolate Bayou Water Co. v. Tex. Natural Res. Conservation Comm=n*, 124 S.W.3d 844, 852 (Tex. App.CAustin 2003, pet. filed) (citing

## DISCUSSION

### A.  Standard of review

Because the extent to which the Commission has unlawfully delegated its authority is a matter of statutory construction, we review the district court=s conclusions *de novo*.  *Public Util. Comm=n v. City of Austin*, 728 S.W.2d 907, 911-12 (Tex. App.CAustin 1987, writ ref=d n.r.e.).  Because the district court=s conclusions of law are reviewed *de novo*, we afford no deference to the district court=s decision.  *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).  The district court=s legal conclusions will be upheld

---

*Friends of Canyon Lake v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 527 (Tex. App.CAustin 2002, pet. denied)).  We also note that resolution of this suit against the Commission will not require the determination of facts in the context of a particular claim for reimbursement.  *See American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804 (Tex. 2001); *Beacon Nat=l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 268 (Tex. App.CAustin 2002, no pet.) (citing and distinguishing *City of Waco v. Texas Natural Res. Conservation Comm=n*, 83 S.W.3d 169, 176-78 (Tex. App.CAustin 2002, pet. denied)).  Here, we are presented with the question of the Commission=s rulemaking authorityCa question subject to declaratory relief.  *See All Saints Health Sys. v. Texas Workers=Comp. Comm=n*, 125 S.W.3d 96, 98-107 (Tex. App.CAustin 2003, pet. denied); *State Bd. of Ins. v. Deffenbach*, 631 S.W.2d 794, 796-802 (Tex. App.CAustin 1982, writ ref=d n.r.e.).  We overrule SORM=s jurisdictional issue.

7

on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Westech Eng=g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.CAustin 1992, no writ). Those conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id*.

## B. Delegation

We begin with a discussion of the delegation issue. In an opinion issued after the parties filed their appeals, the Texas Supreme Court decided that rule 133.304(i) was not an unlawful delegation of the Commission=s fee-setting authority to the insurance carriers. *Patient Advocates*, 2004 Tex. LEXIS 477, at *29-37.[6] Because the validity of rule 133.304(i) is at the heart of every issue on appeal, a review of that case is in order.

For our purposes, the relevant issue in *Patient Advocates* was whether the Commission=s rules for determining reimbursement amounts Ain the absence of specified fee guidelines improperly delegated the agency=s . . . fee-setting authority to private entities.@ *Id*. at *1. The argument was that Apermitting insurance carriers to develop a methodology to determine reimbursement amounts where [the Commission] has not determined a [maximum allowable reimbursement] gives carriers unfettered discretion and allows them to engage in secret rulemaking.@ *Id*. at *29.

---

[6] In a letter brief filed after *Texas Workers=Compensation Commission v. Patient Advocates of Texas*, 47 Tex. Sup. Ct. J. 607, 2004 Tex. LEXIS 477 (May 28, 2004), was decided, East Side conceded the delegation issue. The decision is applicable to all of East Side=s issues, however, so we will briefly discuss the supreme court=s holding.

8

After a discussion similar to ours above reviewing the Act=s reimbursement procedures, the supreme court concluded that the carriers were not setting fees. *Id*. at *34. It noted that, in the absence of a fee guideline, *the provider initially set the fee*, namely, the billed amount. *Id*. It also noted that the A*carriers do not make the final determination* of the fees for disputed claims. If a carrier and a provider disagree on a reimbursement amount, [the Commission], not the carrier, makes the decision on the proper payment, subject to review.@ *Id*. (emphasis added). Any party dissatisfied with the outcome could Acontinue the review process through SOAH and then the courts.@ *Id*. (citing Tex. Lab. Code Ann. ' 413.031(d)). The court also explained that rule 133.304(i) did not give the carriers Ahidden and unbridled discretion to arbitrarily set payments, but [gives] them specific instructions on the procedures they are to follow.@ *Id*. at *35. Consequently, rule 133.304(i) was not an unlawful delegation of the Commission=s fee-setting authority. *Id*.

We address an argument made by East Side that was not directly addressed by *Patient Advocates* but is similar in nature, involving a claim that SOAH, in addition to the carriers, was setting the fees. East Side contends that the methodology employed by SOAH constitutes fee setting. SOAH places appeals from the Commission=s Medical Review Division into various groupings, sorted by carrier and further sorted into common reimbursement methodologies and common procedures. According to East Side, once the methodology is approved, Athe ALJs will then apply the carrier=s reimbursement rates to all cases pending at SOAH involving the carrier.@ Thus, A[g]iving *stare decisis* effect to the approval of a carrier=s reimbursement determinations would, in practical effect, amount to retrospective establishment of a fee guideline for all services billed to that carrier.@

9

First, as indicated above, there has been no delegation of Commission authority. Second, the methodology is consistent with relevant statutes and rules. The legislature has mandated that fees paid for services must be consistent. *See* Tex. Gov=t Code Ann. ' 413.011. The Commission=s rules reflect that requirement. *See* 28 Tex. Admin. Code ' 133.304(i) (requiring the insurance carrier to Adevelop and consistently apply a methodology to determine fair and reasonable reimbursement amounts to ensure that similar procedures provided in similar circumstances receive similar reimbursement@). SOAH=s practice of consolidating cases by carrier and by procedure allows it to determine whether the carrier has applied a consistent methodology. And, again, as the supreme court stated in *Patient Advocates*, because the fee *initially* is set by the provider, there has been no delegation of the Commission=s fee-setting authority.

Following the reasoning in *Patient Advocates*, we conclude that the Commission has not unlawfully delegated its fee-setting authority to either the carriers or SOAH. We sustain the Commission=s first issue, conclude that rule 133.304(i) of title 28 of the administrative code is not an unlawful delegation of the Commission=s fee-setting authority, and reverse the district court=s judgment.

**C. Statutory and legal right to have a fee guideline set**

The district court concluded that rule 133.304(i) was invalid for another reason: the rule interfered with and impaired Athe legal right and privilege of [East Side] to have fee guidelines established by rule by the Commission[].@ On appeal, the Commission makes two arguments. First, it argues that the Commission=s failure to establish a fee guideline is not a legal basis for invalidating the rule. Second, it argues that East Side is not entitled to ACommission action solely by rulemaking.@ The Commission believes that it has the discretion to set the fees paid to East Side on an *ad hoc* basis and is not required to establish fee guidelines by rule. *See* Tex. Lab. Code Ann. '' 413.002, .011, .031 (giving the Commission

10

adjudicatory power over the resolution of fee disputes). East Side counters with the argument that the Commission=s Achoice to abdicate in favor of the insurance carriers is unlawful and prejudicial@ and that it has Aa statutory right to have [its] fees regulated by the Commission, based on the criteria stated in Section 413.011 of the labor code.@

The basis for East Side=s argument is a quote from this Court: A*Unless mandated by statute*, the choice by an agency to proceed by general rule or by ad hoc adjudication is one that lies primarily in the informed discretion of the agency.@ *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 799 (Tex. App.CAustin 1982, writ ref=d n.r.e.) (citing *Securities & Exch. Comm=n v. Chenery Corp.*, 332 U.S. 194, 203 (1947)) (emphasis added). East Side believes that because section 413.011 requires the Commission to adopt the fee guidelines by rule and because that power cannot be delegated, the statute mandates the Commission=s enactment of fee guidelines, *see Deffebach*, 631 S.W.2d at 799.

The supreme court, however, as we discussed above, held there was no delegation. It also held that the Commission complied with the statutory mandate in part, recognizing that Ait may be impossible for [the Commission] to create a comprehensive guideline covering all possible medical procedures that an injured employee might require.@ *Patient Advocates*, 2004 Tex. LEXIS 477, at *31. Similarly, the court cited *Railroad Commission v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1995), and *Texas Boll Weevil Eradication Foundation v. Lewellen*, 952 S.W.2d 454, 471 (Tex. 1997), for the proposition that Aan administrative agency=s failure to include every specific detail and anticipate unforeseen circumstances when promulgating rules does not invalidate the rules.@ *Patient Advocates*, 2004 Tex. LEXIS 477, at *31.

We held similarly in *Brinkley v. Texas Lottery Commission*:

11

The legislature intends that administrative agencies exercise effectively the powers delegated to them . . . . Agencies would be reduced to impotence, however, if bound to express their views as to Alaw,@ Apolicy,@ and procedural Arequirements@ through contested-case decisions or formal rules exclusively; and they could not under such a theory exercise powers explicitly delegated to them by the legislature . . . .

. . . . If every expression by the agency as to Alaw,@ Apolicy,@ and procedural Arequirements@ requires the promulgation of a formal rule, the agency could no longer exercise its Ainformed discretion@ to choose adjudication as a means of making law and policy, rather than rulemaking, a choice we have repeatedly said an agency has when it possesses both adjudicatory and rulemaking powers.

986 S.W.2d 764, 769 (Tex. App.CAustin 1999, no pet.) (citations omitted). As articulated by the supreme court, given the hundreds of medical fees the Commission was charged with establishing and the complexity of some fees, it seems reasonable that the Commission would choose to proceed on an *ad hoc* basis pending the setting of those fees.[7] *Patient Advocates*, 2004 Tex. LEXIS 477, at *32-37.

We also note that at trial and now on appeal, East Side cited no statutory right or privilege to have the fee guidelines set by rule. Section 413.011 simply provides that the Commission must establish fee guidelines that are Afair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control.@ Tex. Lab. Code Ann. ' 413.011(a), (d). East Side is only entitled to Afair and reasonable@ *reimbursement*Cnot to have the fee guidelines established by rule.

Fee guidelines were never intended to be an entitlement. As we stated in *Methodist Hospitals v. Texas Workers=Compensation Commission*, fee guidelines Amerely assist carriers and, upon review, the

---

[7] On October 31, 2003, the Commission proposed fee guidelines for ambulatory surgical centers. 28 Tex. Reg. 9405 (proposed Oct. 31, 2003).

Commission in determining whether medical charges are >fair and reasonable= or satisfy the applicable standard.@ 874 S.W.2d 144, 149-50 (Tex. App.CAustin 1994, writ dism=d w.o.j.). Consequently, even if the Commission had promulgated fee guidelines, the provider would not have a statutory right or privilege to be paid the amount set out in the guideline. East Side=s contention that the Commission was obligated by statute to set the fee guidelines is therefore incorrect. We sustain the Commission=s second issue, reverse, and render on this issue.

**D. In the absence of fee guidelines, the provider=s usual and customary charge applies**

East Side raises one issue on appeal premised on the invalidation of rule 133.304(i). It cites *All Saints Health System v. Texas Workers= Compensation Commission* for the proposition that Athe appropriate remedy following the invalidation of an administrative rule under the APA is to return to the last validly adopted legal standard existing at the time of the rule=s promulgation.@ 125 S.W.3d 96, 102 (Tex. App.CAustin 2003, pet. denied). The last validly adopted legal standard, according to East Side, is rule 42.105, which states that the maximum allowable charge for services rendered is the lesser of the Aprovider=s usual fees and charges,@ or the Afees and charges established by use of a relative value scale.@ 28 Tex. Admin. Code ' 42.105 (2003). Because the Commission had not adopted a relative value scale, East Side felt it was due its usual and customary fee.

This argument fails because the supreme court concluded that rule 133.304 is a valid rule. *Patients Advocates*, 2004 Tex. LEXIS 477, at *36-37. We overrule East Side=s issue.

**CONCLUSION**

We affirm in part and reverse and render in part the judgment of the district court. We reverse the district court=s judgment declaring rule 133.304(i), 28 Tex. Admin. Code ' 133.304, an unlawful delegation of Commission authority and finding that East Side had a legal right or privilege to have the fee guidelines set; we render judgment that the rule is valid, and we dissolve the injunction. Last, because rule 133.304(i) is valid, East Side is not entitled to its usual and customary fee. We affirm the district court=s judgment on that issue.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Rendered in Part.

Filed:   July 29, 2004